UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| BROADCAST MUSIC, INC., *et al.*, | Case No. 1:12-cv-506 |
| Plaintiff, | Judge Timothy S. Black |
| vs. | |
| 4737 DIXIE HIGHWAY, LLC, *et al.*, | |
| Defendants. | |

**DECISION AND ENTRY: (1) GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (DOC. 13); (2) AWARDING STATUTORY DAMAGES IN THE AMOUNT OF $25,000; (3) AWARDING ATTORNEY'S FEES AND COSTS IN THE AMOUNT OF $3,337.32; (4) ENJOINING AND RESTRAINING DEFENDANTS FROM FURTHER INFRINGEMENTS; AND (5) TERMINATING THIS CASE**

This civil action is before the Court on Plaintiffs' Motion for Default Judgment. (Doc. 13). Plaintiffs filed their Complaint on July 3, 2012 (Doc. 1). Summons were issued to all Defendants on that same date. (Doc. 7). Defendants Jeffrey A. Gehrlich and Richard Sizemore were served on July 13, 2012, and their answers to the Complaint were due on or before August 3, 2012. (Doc. 10). Defendant 4737 Dixie Highway, LLC was served on July 14, 2012, and its answers to the Complaint were due on or before August 6, 2012. (*Id.*)

Following Defendants' failure to file answers, Plaintiffs applied for an entry of default against Defendants (Doc. 11), which was entered by the Clerk on August 10, 2012. (Doc. 12). Plaintiffs then filed their Motion for Default Judgment. (Doc. 13). No Defendant filed a response to Plaintiffs' Motion.

### I. FACTS

Plaintiff Broadcast Music, Inc. ("BMI") possesses the right to license the public performance of numerous copyrighted music owned by the ten other named Plaintiffs. (Doc.

1). Defendant 4737 Dixie Highway, LLC operates, maintains, controls, and has a direct financial interest in an establishment known as Cobblestone Tavern. (Doc. 1 at 4). Defendants Jeffrey A. Gehrlich and Richard Sizemore are members of Defendant 4737 Dixie Highway, LLC with primary responsibility for the operation and management of that company and of Cobblestone Tavern and direct financial interests in them. (*Id.*) In connection with the operation of Cobblestone Tavern, musical compositions are publicly performed. (*Id.*).

Sometime before August 2009, BMI learned that Defendants were publicly performing music in their establishment without a license and without the permission of Plaintiffs. (Doc. 13-2). From August 13, 2009 through June 4, 2012, BMI sent 33 letters to Defendants informing them that a license was required to publicly perform music owned and/or licensed by Plaintiffs. (Doc. 13-4). In much of that correspondence, Plaintiffs offered to sell a license to Defendants that would allow them to publicly perform Plaintiffs' music legally at Cobblestone Tavern. (*Id.*) In addition to the letters sent to Defendants, BMI's licensing personnel telephoned Defendants 26 times regarding the licensing requirements. (Doc. 13-2). At no time did Defendants enter into a licensing agreement with BMI. (*Id.*)

On April 28, 2012, Plaintiffs sent an investigator, James Ernst, to Cobblestone Tavern to "make an audio recording and written report of the music being publicly performed" at that establishment. (*Id.*) That investigation revealed that Defendants publicly performed at least five songs on that date. (Doc. 1). Plaintiffs advised Defendants of their investigation via letter and again offered Defendants another opportunity to resolve the matter by entering into a license agreement in exchange for payment of outstanding licencing fees and the costs

of investigation in the amount of $6,231.68. (Doc. 13-4).

According to Lawrence E. Stevens, Vice President of General Licensing for BMI, "[h]ad the Defendants entered into an agreement at the time BMI first contacted them in August 2009, the estimated license fees between August 1, 2009 and July 31, 2012 would have been approximately $8,176.95" and "[t]he current annual license fee would be approximately $2,065.50" (Doc. 13-2). Having failed to informally resolve the issues with Defendants, Plaintiffs filed this lawsuit alleging five counts of copyright infringement (Doc. 1) and now move for default judgment. (Doc. 13).

## II. STANDARD OF REVIEW

Applications for default judgment are governed by Fed. R. Civ. P. 55(b)(2). Following the clerk's entry of default pursuant to Fed. R. Civ. P. 55(a) and the party's application for default under Rule 55(b), "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Morisaki v. Davenport, Allen & Malone, Inc.*, No. 2:09-cv-0298 MCE DAD, 2010 WL 3341566, at *1 (E.D. Cal. Aug. 23, 2010) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F.2d 1319, 1323 (7th Cir.1983) (further citations omitted)).

In other words, while liability may be shown by well-pleaded allegations, "[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Osbeck v. Golfside Auto Sales, Inc.*, No. 07-14004, 2010 WL 2572713, at *5 (E.D. Mich. Jun. 23, 2010). To ascertain an uncertain sum of damages, Rule 55(b)(2) "allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj v. Peterson*, 331 Fed. Appx. 351, 354-55 (6th Cir. 2009). Instead, the court may rely on affidavits submitted on the issue of damages. *See Schilling v. Interim Healthcare of*

*Upper Ohio Valley, Inc.*, No. CIV A 206-CV-487, 2007 WL 152130, at *2 (S.D. Ohio Jan. 16, 2007); *see also LaFarge North America Inc. v. Wells Group, Inc.*, No. 4:08-cv-95, 2009 WL 2601854, at *4 (E.D. Tenn. Aug. 24, 2009); *Frazier v. Absolute Collection Serv., Inc.*, - - - F. Supp.2d - - -, 2011 WL 529997, at *5 (N.D. Ga. Feb. 3, 2011) (stating that certain courts note "that an evidentiary hearing is not necessary where the moving party has provided supporting affidavits as to the issue of damages").

## III. ANALYSIS

### A. Injunctive Relief

First, Plaintiffs request that the Court enjoin and restrain Defendants "from infringing, in any manner, the copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C. § 502." (Doc. 13). "[A] 'showing of past infringement and a substantial likelihood of future infringement' justifies issuance of a permanent injunction.'" *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 492 (6th Cir. 2007) (citing Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.06 [B] (2007)). In fact, "'[w]hen a copyright plaintiff has established a threat of continuing infringement, he is entitled to an injunction.'" *Id*.

Here, the requirement of past infringement is satisfied. Further, in light of Defendants' acts of ignoring Plaintiffs' 59 attempts over a three year period of time seeking to inform Defendants of their need to obtain licensing in order to publicly perform copyrighted works and ignoring Plaintiffs' requests to cease and desist the public performance of music licensed by BMI, the Court concludes that there is a substantial likelihood of future infringement.

Accordingly, Plaintiffs' Motion in this regard is **GRANTED**. Defendants shall be **ENJOINED** and **RESTRAINED** from infringing, in any manner, the copyrighted musical

compositions licensed by BMI.

## B.  Statutory Damages

"[A]n infringer of copyright is liable for either - (1) the copyright owner's actual damages and any additional profits of the infringer . . . or (2) statutory damages[.]" 17 U.S.C. § 504(a). Here, Plaintiffs seek statutory damages under 17 U.S.C. § 504(c)(1), which provides that:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

Plaintiffs seek statutory damages in the amount of $5,000 per each of the five claims of infringement, which would total $25,000, an amount approximately three times the amount Defendants should have paid in licensing fees from August 1, 2009 to July 31, 2012.

When determining the proper amount of statutory damages within the range set forth in § 504(c), "courts have looked to: (1) whether Defendants' infringement was willful, knowing, or innocent; (2) Defendants' profit from infringement; (3) Plaintiffs' loss from infringement; and (4) deterring future violations by Defendants and similarly situated entities." *Broadcast Music, Inc. v. H.S.I., Inc.*, No. 2:06-cv-482, 2007 WL 4207901, at *6 (S.D. Ohio Nov. 26, 2007) (citing *Sailor Music v. IML Corp.*, 867 F.Supp. 565, 570 (E.D.Mich.1994); *Boz Scaggs Music v. KND Corp.*, 491 F.Supp. 908, 914 (D.Conn.1980)).

With regard to the willfulness of the infringement, the evidence presented establishes that, beginning in August of 2009, and continuing for approximately three years, Plaintiffs sent Defendants 33 letters and placed 26 phone calls (*i.e.*, 59 total communications) to

Defendants informing them of the requirements of a license, offering licenses to Defendants, and ordering Defendants to cease and desist playing copyrighted music without a license. In light of this evidence and the admissions resulting from default, the Court concludes that Defendants' infringement was willful. *See H.S.I.*, 2007 WL 4207901 at *5.

With regard to profits and losses associated with the infringements, Plaintiffs evidence $8,176.95 in lost licensing fees. (Doc. 13-2). While Stevens, in his affidavit, refers to this amount as "estimated," the Court concludes that Plaintiffs sufficiently set forth the appropriate figure of Defendants' costs savings and Plaintiffs' loss. As one court recently stated, even where the amount of licensing fees "is an approximation," such figure can be "a sufficient indicator that Defendants recognized significant savings as a consequence of their infringement, and, conversely, that Plaintiffs suffered a revenue loss." *Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp.2d 537, 545 (E.D. Pa. 2008). This Court has previously relied on estimated lost licensing fees as sufficient evidence of loss associated with copyright infringement. *Broadcast Music, Inc. v. Pub Dayton, LLC*, 2011 U.S. Dist. LEXIS 57211, at * 14 (S.D. Ohio May 27, 2011).

As in that case, no hearing is necessary here in order to fix the appropriate award of statutory damages despite the fact that Plaintiffs seek to impose $5,000 per infringement, an award above the minimum statutory amount (though far below the maximum). The record before the Court, including affidavits and documentary evidence provided by Plaintiffs, is more than sufficient to make the determination of statutory damages. *Pub Dayton, LLC, supra*, at *11.

Typically, "in the narrow class of cases dealing with willful, unauthorized, musical

performances in public establishments, the damages awards range from two times the licensing fee to five times the licensing fee." *DeGallo*, 872 F. Supp. at 169. In fact, cases within this Circuit have recognized that the method of awarding statutory damages based "on some multiple of unpaid fees is more appropriate than measuring damages by the number of infringements." *H.S.I.*, 2007 WL 4207901 at *6 (citations omitted) (awarding "statutory damages of three times the unpaid fees"); *Gnat Booty Music v. Creative Catering of Wadhams, LLC*, --- F. Supp.2d ---, No. 09-14746, 2011 WL 43427 (E.D. Mich. 2011) (awarding approximately three times the total cost of licensing fees after stating that "courts have routinely ordered damages well in excess of-and typically approximately three times-the amount the defendant would have paid if it had properly obtained a license"); *Sailor Music v. IML Corp.*, 867 F. Supp. 565, 570 (E.D. Mich. 1994) (awarding approximately "three times" the license cost after accepting the contention that "courts typically award three times the amount of a properly purchased license for each infringement").

The reasoning behind such a de facto treble damages award "is to put defendants 'on notice that it costs less to obey the copyright laws than to violate them.'" *Sailor Music*, 867 F. Supp. at 570 n.7 (citing *Music City Music v. Alfa Foods, Ltd.*, 616 F.Supp. 1001, 1003 (E.D.Va.1985)); *see also Gnat Boot Music*, 2011 WL 43427 at *3. Here, in light Defendants' willful infringements, evidenced by the fact that Defendants ignored Plaintiffs' 59 documented attempts (over a three year period of time) to inform Defendants of their need to obtain licensing in order to publicly perform copyrighted works, the Court concludes that Plaintiffs' request for statutory damages in the amount of $5,000 for each of five infringements is appropriate and warranted.

Accordingly, Plaintiffs are entitled to recover from Defendants $5,000 in statutory damages for each infringement, *i.e.*, a total of $25,000 in statutory damages.

### C. Attorney Fees and Costs

Finally, Plaintiffs seek attorney fees and costs in the total amount of $3,337.32. Pursuant to 17 U.S.C. § 505, in copyright infringement cases, "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs."

In determining whether to award attorney fees, the Sixth Circuit instructs the Court to consider a "series of factors" including "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Zomba Enterprises, Inc. v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). The Sixth Circuit also holds that "[t]he grant of fees and costs 'is the rule rather than the exception and [they] should be awarded routinely.'" *Bridgeport Music, Inc. v. WB Music Corp.*, 520 F.3d 588, 592 (6th Cir. 2008) (citations omitted).

Here, in light of Defendants' willful infringements, the Court concludes that Plaintiffs are entitled to attorney's fees and costs pursuant to § 505. Plaintiffs have evidenced, via the affidavit of counsel, reasonable attorney's fees in the amount of $2,900.00 and costs in the amount of $437.32. (Doc. 13-5).

Accordingly, Plaintiffs' Motion with regard to attorney fees and costs is **GRANTED**.

Plaintiffs shall recover from Defendants attorney fee's and costs in the total amount of $3,337.32.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Default Judgment (Doc. 13) is **GRANTED**. Judgment shall be entered in favor of Plaintiffs and against Defendants as follows:

(1) Plaintiffs shall recover from Defendants statutory damages of $5,000 on each of the five counts of copyright infringement, for a total statutory damage award of $25,000.00;

(2) Plaintiffs shall recover from Defendants attorney fees and costs in the amount of $3,337.32;

(3) interest on the full amount of this Order from the date of judgment until paid pursuant to 28 U.S.C. § 1961; and

(4) Defendants are hereby **ENJOINED** and **RESTRAINED** from infringing, in any manner, the copyrighted musical compositions licensed by BMI.

A separate entry of Judgment will issue.

**IT IS SO ORDERED.**

Date: 10/9/12

Timothy S. Black
United States District Judge